## 20909

Thomas C. McCAIN, William Spencer, Odell Glover and George Smith, Appellants, v. John F. EDWARDS, Norman Dorn and Richard A. Beals, Individually and in their official capacities as members of the Board of Election Commissioners of Edgefield County, South Carolina, and Charles E. Lybrand, Gene Huiet, Henry M. Herlong and Paul Winn, Individually and in their official capacities as members of the County Council of Edgefield County, South Carolina, Respondents.

(252 S. E. (2d) 924)

*Warren & Pitts,* Allendale, *Laughlin McDonald,* Atlanta, Ga. and *Epstein, McClain & Derfner,* Charleston, *for appellants.*

*Charles W. Coleman,* Edgefield, *for respondents.*

March 12, 1979.

LITTLEJOHN, Justice:

This action was commenced by the plaintiffs, who are registered voters and citizens of Edgefield County, against

the members of the Board of Election Commissioners and against the members of the Edgefield County Council. The purpose of the action is to require the defendants to hold an election to determine the form of local government to be used in Edgefield County. The lower court refused to order an election. The plaintiffs have appealed.

On June 15, 1975, the General Assembly of South Carolina enacted a law providing for alternate forms of county government in the 46 counties. It is sometimes referred to as "the Home-rule Act," and came about as a result of a constitutional amendment, Article VIII, ratified in 1973. The statute provided that Edgefield County would have the council-administrator form of government. At the same time, the statute (§ 4-9-10 of the 1976 Code) provided that every county could have a popular election called by (1) an act of the General Assembly, (2) the local governing body, or (3) upon petition of not less than ten percent of the registered electors of the county. The relevant portion of this section reads as follows:

"(a) Each county, after at least two public hearings which shall have been advertised in a newspaper of general circulation in the county and wherein the alternate forms of government provided for in this chapter are explained by the legislative delegation of the county, may prior to July 1, 1976, conduct a referendum to determine the wishes of the qualified electors as to the form of government to be selected or become subject to the provisions of subsection (b) of this section. The referendum may be called by [1] an act of the General Assembly, [2] resolution of the governing body, or [3] upon petition of not less than ten percent of the registered electors of the county. The referendum shall be conducted by the county election commission. The question submitted shall be framed by the authority calling for the referendum and when called by petition such petition shall state the question to be proposed. All alternate forms of government provided for in this chapter shall appear on the ballot and unless

one form receives a majority favorable vote in the initial referendum, a second or runoff referendum shall be held two weeks after the first referendum at which time the two forms which received the highest number of votes shall again be submitted to the qualified electors for final selection of the form to be adopted. . . .

"(b) Notwithstanding any other provisions of this chapter, unless otherwise determined by referendum prior to July 1, 1976, the county concerned shall, beginning on that date, have the form of government including the method of election, number, composition and terms of the governing body most nearly corresponding to the form in effect in the county immediately prior to that date, which the General Assembly hereby determines to be as follows:

\* \* \* \* \*

"For the counties of . . ., Edgefield, . . . the council-administrator form of government as prescribed in Article 7 of this chapter.

\* \* \* \* \*

"(c) After the initial form, number and composition has been adopted and selected, the adopted form, number and composition shall not be changed for a period of two years from the date such form becomes effective and then only as a result of a referendum as hereinafter provided for. Referendums may be called by the governing body or upon petition of not less than ten percent of the registered electors of the county. Petitions shall be certified as valid or rejected by the county board of registration within sixty days after they have been delivered to the board and, if certified, shall be filed with the governing body which shall provide for a referendum not more than ninety days thereafter. . . ."

The section is silent as to the time, prior to July 1, 1976, of the filing of a petition and is silent as to the time and details of advertisements notifying the electorate of the election.

Petition pages, numbered 1 through 57, were submitted to the Edgefield County Election Commission on May 13, 1976, and referred to the Registration Board on May 17 for verification. Identical petition pages, numbered 58 through 73, were submitted to a member of the Registration Board on May 19, and handed to the Chairman on May 24 or 25. The May 13 petition contained a total of 715 names, of which 621 were valid. This was 29 short of the 650 required to call an election. The May 19 petition contained a total of 201 names, of which 161 were valid. Accordingly, it is seen that the two sets of pages, if considered together, supply the necessary number, while neither set considered alone was sufficient. On June 4, the Chairman of the Registration Board finished verifying the second set of pages. On June 7, the Chairman of the County Election Commission was advised of the number of verified signatures. On June 9, he notified defendant Lybrand, of the County Council.

No election was called and no election was held. This action ensued.

Tuesday is election day in South Carolina. The Act contemplates an election, followed by a runoff two weeks later, and accordingly, the last dates on which the two elections could have possibly been held were June 15 and June 29. More often laws calling for an election, general or special, detail the time and notice requisites. When times are not specified, a reasonable notice is required. What is reasonable depends upon the type of election and the circumstances of the case. While the time for holding an "initial" election (prior to July 1, 1976) is not specified, we get a hint from the legislative thinking when the act specifies that petitions for subsequent elections must be certified within 60 days after delivery to the registration board, and specifies that the referendum shall be held by the governing body not more than 90 days thereafter. Obviously, the General Assembly recognizes the fact that changing the form of county government is a serious matter which should not be brought about without full deliberation and an opportunity for the electorate

to have a complete understanding of the issues before voting. If at subsequent referendum elections the board is given 60 days in which to certify, it can hardly be argued that failure to certify under the facts of this case, as recited hereinabove, was dilatory. Preparation for an election involves the appointment of precinct box managers, financing, the preparation of ballots, and the arrangement of places for an election, as well as the provision of ample notice to the electorate. If it be said that the Board of Election Commissioners, the Board of Registration, and the County Council were less than fully diligent, it can be argued with much greater force that the petitioners, having waited from June 25, 1975 to May 13, 1976, to file the first set of pages, were far more dilatory.

We need not reach the question of whether the identical petitions filed first and those filed later may be considered together. To file petitions at different times is certainly out of the ordinary, and the Election Commissioners might have been justified in waiting until all pages were filed before ordering verification to begin.

In summary, we hold that the petitions, be there one or two, were not filed in sufficient time to provide reasonable notice to the electorate and the two public hearings (with explanations by the legislative delegation), as contemplated by the act. Legal sales, § 15-29-60, require three weeks publication in this state. Certainly an election of the magnitude here involved should be publicized longer. Counsel for the plaintiffs, in his brief, would chide the defendants for not taking action in preparation for a referendum as soon as the petitions were received. We think, however, that there was no duty to proceed with plans for an election until it had been established that a sufficient number of qualified electors had signed the petition.

Affirmed.

LEWIS, C. J., RHODES and GREGORY, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.